OPINION
{¶ 1} On November 6, 2003, the Licking County Grand Jury indicted appellant, Ian Crowley, on five counts of burglary in violation of R.C. 2911.12, one count of attempted burglary in violation of R.C. 2911.12 and R.C. 2923.02, one count of aggravated robbery with a firearm specification in violation of R.C. 2911.01, one count of aggravated burglary with a firearm specification in violation of R.C. 2911.11 and one count of having weapons while under disability in violation of R.C.2923.13.
 {¶ 2} On December 8, 2003, appellant filed a motion to suppress all evidence, claiming an unreasonable seizure. A hearing was held on January 27, 2004. By judgment entry filed February 18, 2004, the trial court denied said motion.
 {¶ 3} On April 7, 2004, appellant pled no contest to the charges. By judgment entry filed same date, the trial court found appellant guilty and sentenced him to one year each on the five burglary counts and the attempted burglary count, to be served consecutively, five years each on the aggravated robbery and aggravated burglary counts, three years each on the two firearm specifications and one year on the weapons count. The five and final one year sentences were to be served concurrently, but consecutive to the six one year sentences. The two firearm sentences were to be served concurrently but prior to and consecutive to the other sentences.
 {¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 5} "The trial court committed harmful error in denying the Defendant-Appellant's motion to suppress evidence."
 II {¶ 6} "The trial court committed harmful error in sentencing the Defendant-Appellant to consective (sic) terms of incarceration."
 I {¶ 7} Appellant claims the trial court erred in denying his motion to suppress. Specifically, appellant claims he was unreasonably seized during the initial stop, and the officer lacked a reasonable suspicion of criminal activity pursuant toTerry v. Ohio (1968), 392 U.S. 1. We disagree.
 {¶ 8} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning (1982), 1 Ohio St.3d 19; Statev. Klein (1991), 73 Ohio App.3d 485; State v. Guysinger
(1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v.Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994),95 Ohio App.3d 93; State v. Claytor (1993), 85 Ohio App.3d 623;Guysinger. As the United States Supreme Court held in Ornelasv. U.S. (1996), 116 S.Ct. 1657, 1663, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 9} In Terry v. Ohio (1968), 392 U.S. 1, 22, the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to Terry, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. State v. Freeman (1980),64 Ohio St.2d 291, paragraph one of the syllabus.
 {¶ 10} Appellant claims the facts and circumstances available to the officer were insufficient to support the stop without a warrant. We note probable cause to stop is not the same as probable cause to search or arrest. Arrest focuses on the prior actions of the accused. Probable cause exists when a reasonable prudent person would believe that the person arrested had committed a crime. State v. Timson (1974), 38 Ohio St.2d 122. A determination of probable cause is made from the totality of the circumstances. Factors to be considered include an officer's observation of some criminal behavior by the defendant, furtive or suspicious behavior, flight, events escalating reasonable suspicion into probable cause, association with criminal and locations. Katz, Ohio Arrest, Search and Seizure (2001 Ed.), 83-88, Sections. 3.12-3.19.
 {¶ 11} On October 27, 2003, Licking County Sheriff's Deputy Timothy Caldwell was informed via a dispatch that the Heath Police Department was investigating a burglary with an armed suspect. T. at 28. Deputy Caldwell was told the suspect had fled the scene on a BMX style bicycle. T. at 29, 30, 42. The suspect was wearing a light colored sweater or sweatshirt and a ball cap. T. at 43-44. As he was patrolling a shopping center parking lot, Deputy Caldwell observed an individual on a bicycle. T. at 29-30. The individual did not make eye contact with Deputy Caldwell. T. at 32. Deputy Caldwell was then informed via the radio that an individual by the name of Ian Crowley "fit the description and the same method of operation" as he had used in the past. T. at 34. Deputy Caldwell approached the individual and asked for his name. T. at 35. The individual replied, "Ian Crowley." Id. Appellant appeared "kind of nervous, kind of shaky, looking around a whole lot." T. at 41. Deputy Caldwell then informed appellant that the Heath police wanted to speak to him and "they'll be here in just a couple minutes." T. at 36. Thereafter, the Heath police arrived and conducted an investigation. T. at 37. One of the victims, Stanley Romine, was brought to the scene and identified appellant as the individual who had broken into his home earlier. T. at 38-39. Mr. Romine testified appellant fit the general height and weight, gender, race and age of the suspect, but was wearing different clothing, a different ball cap and a blue sweater. T. at 20-21, 25. At no time did appellant ask Deputy Caldwell if he could leave. T. at 36-37.
 {¶ 12} The transcript of the 911 call made by Mr. Romine confirms he described the suspect as white, twenty maybe, wearing a light colored sweatshirt and jeans, and he reported the suspect had fled on a bicycle. See, Transcript of 911 Call attached to Discovery Record filed November 25, 2003.
 {¶ 13} Admittedly, Mr. Romine testified appellant's clothes at the scene did not match the clothing he had described. However, it is not what a victim knows that is critical to a determination under Terry, but what a police officer knows. Deputy Caldwell knew the suspect was in the perimeter area of Mr. Romine's home, and the shopping center parking lot was a half mile away from the home. T. at 16, 28-29. Deputy Caldwell knew he was looking for a white male, wearing a light colored sweater/sweatshirt, jeans and ball cap, riding a BMX style bicycle. T. at 32, 40, 42-43. He knew the individual he observed on the bicycle was not making eye contact and was acting nervously. T. at 32, 41. Deputy Caldwell also knew of a suspect in similar robberies who used a bicycle to escape, and that suspect was an individual by the name of Ian Crowley. T. at 34.
 {¶ 14} We find these facts meet the Terry test for stopping appellant. The next inquiry is whether Deputy Caldwell was justified in asking appellant to wait for the Heath police. Deputy Caldwell testified to the following:
 {¶ 15} "A. I talked to him a little bit, and I said — he says — he asked me what was going on. I said, well, Heath PD is en route, they'd like to talk to you. He said what about. I said well — I didn't tell him. I don't remember what I told him, but I didn't tell other than they'll be here in just a couple minutes." T. at 36.
 {¶ 16} Once appellant identified himself to Deputy Caldwell as Ian Crowley, and Deputy Caldwell knew appellant was a suspect in a similar robbery scheme, we find there was specific and articulable facts to have appellant wait for the Heath police. These facts take the encounter from a casual police encounter and hunch to the level of specific, articulable facts.
 {¶ 17} Upon review, we find the trial court did not err in denying the motion to suppress.
 {¶ 18} Assignment of Error I is denied.
 II {¶ 19} Appellant claims the trial court erred in sentencing him to consecutive sentences. Specifically, appellant claims the trial court failed to give specific reasons for its findings. We disagree.
 {¶ 20} R.C. 2953.08 governs an appeal of sentence for felony. Subsection (G)(2) states as follows:
 {¶ 21} "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
 {¶ 22} "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (E)(4) of section 2929.14, or division (H) of section2929.20 of the Revised Code, whichever, if any, is relevant;
 {¶ 23} "(b) That the sentence is otherwise contrary to law."
 {¶ 24} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 25} By judgment entry filed April 7, 2004, the trial court sentenced appellant to an aggregate term of fourteen years: one year each on the five burglary counts and the attempted burglary count, to be served consecutively, five years each on the aggravated robbery and aggravated burglary counts, three years each on the two firearm specifications and one year on the weapons count. The five and final one year sentences were to be served concurrently, but consecutive to the six one year sentences. The two firearm sentences were to be served concurrently but prior to and consecutive to the other sentences.
 {¶ 26} Appellant argues the trial court erred in ordering the sentences to be served consecutively.
 {¶ 27} R.C. 2929.14(E)(4) governs multiple sentences and states as follows:
 {¶ 28} "(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 29} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 30} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 31} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 32} R.C. 2929.19(B)(2)(c) states the following:
 {¶ 33} "(2) The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
 {¶ 34} "(c) If it imposes consecutive sentences under section2929.14 of the Revised Code, its reasons for imposing the consecutive sentences."
 {¶ 35} In sentencing appellant to consecutive sentences, the trial court stated the following:
 {¶ 36} "However, there are, let's see, one, two, three, four, five, six, at least seven victims in this case that you victimized that I would be remiss in my duties as a sentencing judge if I ignored the fact that at one residence, you had a firearm. Granted, you turned that over to the individual. However, the fact remains, you were under parole at the time. There are consequences. You are accountable.
 {¶ 37} "The Court is ordering that consecutive sentences be imposed in this case finding that it is necessary to protect the public, to punish the defendant, and finding that the sentence is not disproportionate to the conduct of the defendant.
 {¶ 38} "Further, the Court indicates that consecutive sentences are necessary because of the criminal history of the defendant; shows that consecutive terms are needed to protect the public, and that the defendant was under sanctions at the time of committing the offenses. Further, there are multiple victims involved in this case, and, therefore, the Court determines that it is appropriate to sentence the defendant to consecutive sentences." T. 27-28 and 29-30, respectively.
 {¶ 39} Appellant argues the trial court's findings do not conform to the dictates of State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165, paragraph one of the syllabus, wherein the Supreme Court of Ohio held, "Pursuant to R.C. 2929.14(E)(4) and2929.19(B)(2)(c), when imposing consecutive sentences, a trial court is required to make its statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing." We disagree. Upon review of the sentencing transcript in toto, we find the trial court's findings and reasons were sufficient under R.C. 2929.14(E)(4) and R.C. 2929.19(B)(2)(c) to justify the consecutive nature of the sentences.
 {¶ 40} Assignment of Error II is denied.
 {¶ 41} The judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed.
Farmer, J., Hoffman, P.J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Licking County, Ohio is affirmed.